## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**06 CR 214 CVE**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | No. _____ |
| ) | |
| **Plaintiff,**    ) | **FILED UNDER SEAL** |
| ) | |
| vs.    ) | **I N F O R M A T I O N** |
| ) | [33 U.S.C. §1319(c)(2)(A):Clean Water |
| **SINCLAIR TULSA REFINING**    ) | Act] |
| **COMPANY,**    ) | |
| ) | **FILED** |
| **Defendant.**    ) | |

SEALED

**FILED**

DEC 1 2 2006

Phil Lombardi, Clerk
U.S. DISTRICT COURT

### THE UNITED STATES ATTORNEY CHARGES:

### COUNT ONE

#### I.    Introduction

At all times material to this Information:

1.   Defendant **SINCLAIR TULSA REFINING COMPANY** ("**SINCLAIR**") was a Wyoming Corporation, incorporated on December 28, 2005. On March 1, 2006, defendant **SINCLAIR** acquired all assets and assumed all liabilities with respect to the Tulsa Refinery from its parent company. All employees at the Tulsa Refinery as of February 28, 2006 were retained by **SINCLAIR**. **SINCLAIR**'s parent company owned and operated the Tulsa Refinery from 1983 to March 1, 2006. It has operated an oil refinery in Tulsa County, Oklahoma, since 1983.

2.   Tanks 474 and 475 were 3,066,000-gallon storage tanks at the Tulsa Refinery that were used to store wastewater prior to treatment and discharge.

3.      The "L-Shaped Pond," also known as impoundment F02/F03, was a concrete-lined impoundment with a capacity of 6.94 million gallons, authorized to receive only storm water run-off from refinery process units.

4.      The Walnut Grove Treatment Unit was a 20-acre plot of land on defendant **SINCLAIR**'s refinery premises that was authorized for the disposal of treated refinery waste water.

5.      The Flare Area Treatment Unit was a 25-acre plot of land on the Tulsa Refinery premises that was formerly authorized for disposal of certain refinery wastes.

6.      Between January 2000 and March 2004, the Sinclair refinery discharged an average of 1.1 million gallons of treated wastewater per day into the Arkansas River.

7.      Defendant **SINCLAIR**, by and through its employees, did knowingly manipulate refinery processes, wastewater flows, and discharges of wastewater to the Arkansas River so as to cause unrepresentative sampling and monitoring of the wastewater discharge, in order to influence analytical testing results reported to the ODEQ and EPA.  Defendant **SINCLAIR** would and did:

        a.  Reduce flow rates of wastewater discharges to the river during monitoring periods;

        b.  Divert to holding impoundments wastewater flows that exceeded treatment and discharge rates;

        c.  Divert more heavily contaminated wastewater to holding

impoundments;

      d.  Divert process wastewater to a storm water impoundment;

      e.  Increase discharge flow rates during periods of no monitoring;

      f.  Irrigate Land Treatment Units extensively with refinery

wastewater during monitoring periods;

      g.  Change processing of refinery crude oil stock during monitoring

periods.

    8.    The State of Oklahoma has established a regulatory control program for limiting discharges of pollutants into waters of the state, through the issuance of permits in accordance with the Oklahoma Pollutant Discharge Elimination System (OPDES). Pursuant to provisions in the CWA, the Administrator of the United States Environmental Protection Agency (EPA) delegated authority to the State of Oklahoma, Department of Environmental Quality (ODEQ), to administer the NPDES program on November 19, 1996. 61 Fed. Reg. 65,047 (1996). Pursuant to that authority, the ODEQ may issue NPDES permits for discharge of pollutants into waters of the U.S. Subsequent to delegation of NPDES authority, the ODEQ has issued joint NPDES/OPDES discharge permits.

    9.    On May 1, 1998, the ODEQ issued OPDES/NPDES permit OK0001309 to the Sinclair Oil Corporation Tulsa Refinery, which was effective July 1, 1998, and expired June 30, 2003, and was continued in effect from June 30, 2003 until August 31,

2009 pursuant to an application for renewal filed on January 6, 2003. The permit

authorized the discharge of treated wastewater into the Arkansas River, pursuant to

certain limitations and conditions. Among the permit conditions was a requirement that

defendant **SINCLAIR** conduct compliance monitoring of the treated wastewater

discharged to the river, during three 24-hour periods each week. Defendant **SINCLAIR**

conducted the required sampling during weekdays. The permit also required that samples

and measurements taken for the purpose of monitoring shall be representative of the

monitored activity. Among the limitations in the permit was a requirement that Sinclair's

treated wastewater discharge to the river not exceed daily and monthly concentrations

established for certain pollutants, and not exceed daily and monthly mass loading limits;

periodic toxicity monitoring was also required.

        10.     On February 19, 2002, based on an entry in the Orders Book, "Keep

wastewater at 800 GPM (gallons per minute)/oil and grease still high," defendant

**SINCLAIR** directed employees who operated the wastewater treatment unit to restrict

wastewater flow to the river during the NPDES/OPDES testing period due to high oil and

grease concentration in the wastewater.

        11.     On February 22, 2002, based on an order in the Orders Book to "limit

flow from Tank 475 to the wastewater treatment plant between February 22 and 27

because bio-monitoring was imminent," defendant **SINCLAIR** directed employees who

operated the wastewater treatment unit to limit the flow of toxic process wastewater from

Tank 475 into the wastewater treatment plant during the period Sunday, February 24,

2002, until Wednesday, February 27, 2002 or Thursday, February 28, 2002, because a

OPDES/NPDES permit required bio-monitoring test was imminent.

12.      On Monday, June 10 and again on Tuesday June 11, 2002, based on

direction in the Orders Book, "STOP draw back until Wednesday (flea test imminent),"

Sinclair directed employees who operated the wastewater treatment unit to temporarily

stop the flow of wastewater from Tank 475 into the wastewater treatment plant until June

13, 2002, because a OPDES/NPDES required bio-toxicity monitoring test was scheduled

to take place.

13.      On August 14, 2003, based on an entry in the Orders Book, Draw back all

you can, watch PH and don't flood clarifiers," defendant **SINCLAIR** directed employees

who operated the wastewater treatment unit to draw all the impounded wastewater that

they could from Tank 475 into the wastewater treatment system over the weekend, during

a non-sampling period, yet to monitor the PH or acidic level in the wastewater and its

effect on the wastewater treatment system, and to reduce the drawback on the following

weekday.

14.      On December 24, 2003, based on an order in the Orders Book, "Cut back

weekend flows to 700-800 GPM (gallons per minute) since bio-monitoring test

imminent," defendant **SINCLAIR** directed employees who operated the wastewater

treatment unit, to limit the flow of wastewater to the river to 700-800 gallons-per-minute

beginning on the morning of Saturday, December 27, 2003, because defendant

**SINCLAIR**'s OPDES/NPDES permit required bio-toxicity monitoring event was

scheduled to occur.

15.     On December 29, 2003, based on an entry in the Stardate Book, " Put

tank 8 on charge to VPS because crude is high in ammonia and we must sample for our

flea test," defendant **SINCLAIR** directed its employees to divert crude oil received from

a particular pipeline to a storage tank, and substitute "sweet crude" oil from Tank 8 to a

refinery process, because the particular pipeline crude was high in ammonia which can

cause bio-toxicity monitoring test which was scheduled to take place to fail.

From on or about August 14, 2003, in the Northern District of Oklahoma,

Defendant **SINCLAIR** did knowingly manipulate wastewater flows and discharges of

wastewater to the Arkansas River so as to cause unrepresentative sampling and

monitoring of the wastewater discharge, a violation of an OPDES/NPDES permit

condition.

All in violation of Title 33, United States Code, Section 1319 (c) (2) (A), and Title

18, United States Code, Section 2.

## COUNT TWO

The United States realleges, adopts, and incorporates by reference herein, all of the allegations contained in Section I, 1-13 of Count One of the Information, and further alleges:

From on or about December 24, 2003, to on or about December 29, 2003, in the Northern District of Oklahoma, Defendant **SINCLAIR** did knowingly manipulate wastewater flows and discharges of wastewater to the Arkansas River so as to cause unrepresentative sampling and monitoring of the wastewater discharge, a violation of an OPDES/NPDES permit condition.

All in violation of Title 33, United States Code, Section 1319 (c) (2) (A), and Title 18, United States Code, Section 2.

Sue Ellen Wooldridge
Assistant Attorney General for the
Environment and Natural Resources
Division

Mark W. Kotila
Senior Trial Attorney
Environmental Crimes Section

-7-